AUSAs: Remy Grosbard and Joseph Rosenberg

| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **24 MAG 1484** |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANTHONY WALLACE,<br><br>　　　　　　　　　　Defendant. | <u>SEALED COMPLAINT</u><br><br>Violations of 18 U.S.C. §§ 1201, 2252A and 2<br><br>COUNTY OF OFFENSE:<br>BRONX |

SOUTHERN DISTRICT OF NEW YORK:

　　　　COURTNEY THORPE, being duly sworn, deposes and says that he is a Task Force Officer with the Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE
### (Kidnapping of a Minor)

　　　　1.　　From at least on or about March 10, 2024, through at least on or about April 4, 2024, in the Southern District of New York and elsewhere, ANTHONY WALLACE, the defendant, knowingly and unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, and carried away and held for ransom and reward and otherwise a person (the "Victim"), and the Victim was willfully transported in interstate and foreign commerce, and WALLACE traveled in interstate and foreign commerce and used the mail and a means, facility, and instrumentality of interstate and foreign commerce in committing and in furtherance of committing the offense, and aided and abetted the same, to wit, WALLACE held the Victim against her will, forced the Victim to engage in commercial sex acts, and had sex with the Victim against her will, in or around the Bronx, New York and in or around Binghamton, New York.

　　　　2.　　At the time of the offense, the Victim had not attained the age of eighteen years, and ANTHONY WALLACE, the defendant, had attained such age, and was not a parent, grandparent, brother, sister, aunt, uncle, or individual having legal custody of the Victim.

　　　　(Title 18, United States Code, Sections 1201(a)(1) and (g)(1), and 2.)

### COUNT TWO
### (Possession of Child Pornography)

　　　　3.　　From at least on or about March 17, 2024, through at least on or about April 4, 2024, in the Southern District of New York and elsewhere, ANTHONY WALLACE, the defendant, knowingly possessed and accessed with intent to view a book, magazine, periodical, film, videotape, computer disk, and other material that contained an image of child pornography that had been mailed, shipped and transported using a means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by computer, and that was produced using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, to wit,

WALLACE possessed sexually explicit images of a minor on his cellphone in the Bronx, New York.

(Title 18, United States Code, Sections 2252A(a)(5)(B) and (b)(2).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4.  I have been a Detective with the New York City Police Department for approximately 19 years. I am currently a Task Force Officer with the FBI's Child Exploitation and Human Trafficking Task Force. On that Task Force, I investigate violations of criminal law relating to the sexual exploitation of children, among other offenses.

5.  I have been personally involved in the investigation of this matter, and I am familiar with the information contained in this Complaint based on my own personal participation in the investigation, my review of documents, forensic reports, and cellphones, my training and experience, my conversations with the Victim, and discussions I have had with other law enforcement personnel about this matter. Because this Complaint is being submitted for the limited purpose of establishing probable cause to arrest the defendant, I have not included the details of every aspect of the investigation. Where actions, conversations, and statements of others are stated herein, they are stated in substance and in part, except where otherwise indicated.

6.  Based on my participation in this investigation, my conversation with the Victim, my conversations with other law enforcement officers, my review of law enforcement records, documents and reports, my examination of a cellphone that belonged to ANTHONY WALLACE, the defendant, and my participation in the execution of a search warrant of an apartment in the Bronx, New York that is associated with WALLACE, I have learned that on or about March 10, 2024, WALLACE met the Victim, who was 15 years old at the time, in Binghamton, New York; WALLACE forced the Victim to have sex with other individuals in exchange for money; WALLACE transported the Victim to the Bronx apartment; and WALLACE held the Victim against her will in the apartment and raped her, until she escaped on or about April 4, 2024. *See infra* ¶¶ 7–12.

### ***Victim's Statements to Law Enforcement***

7.  Based on my conversations with the Victim, I have learned the following, among other things:

    a.  On or about March 10, 2024, an individual, later identified as ANTHONY WALLACE, the defendant, met the Victim, while she was walking down the street in Binghamton, New York. The Victim was 15 years old at the time she met WALLACE. WALLACE was 31 years old.

    b.  That same day, on or about March 10, 2024, WALLACE took the Victim with him to an inn in Binghamton, New York (the "Inn"), where they stayed until on or about March 11, 2024.

    c. On or about March 11, 2024, the Victim and WALLACE left the Inn and went to an apartment complex located in the vicinity of Roberts Street in Binghamton, New York, where they stayed in various abandoned apartments until on or about April 1, 2024.

    d. While the Victim and WALLACE were in Binghamton, New York, WALLACE forced the Victim to engage in sexual intercourse with other individuals in exchange for money.

    e. On or about April 1, 2024, the Victim and WALLACE took a bus from Binghamton, New York, to New York, New York.  Upon arriving in New York, New York, WALLACE took the Victim to an abandoned apartment located in the Bronx, New York (the "Apartment").

    f. Between on or about April 1, 2024, and on or about April 4, 2024, WALLACE held the Victim against her will in the Apartment.  WALLACE barricaded the front door of the Apartment so that others could not get in.  WALLACE and the Victim used a fire escape attached to a window in the bedroom of the Apartment to enter and exit the Apartment.  There was a green curtain covering this window.

    g. On or about April 2, 2024, the Victim turned 16 years old, while she was being held against her will by WALLACE.  The Victim told WALLACE of her age and her birthday, and WALLACE was aware of the Victim's age and birthday.

    h. While inside the Apartment, WALLACE forcibly raped the Victim against her will, including with the use of a dildo.  The Victim told WALLACE that she did not want to have intercourse with him and tried to fight him off.  The Victim suffered vaginal tearing from this experience.

    i. On or about April 4, 2024, the Victim escaped from the Apartment while WALLACE was sleeping.  When the Victim escaped from the Apartment, she took WALLACE's cellphone with her (the "WALLACE Phone").  The Victim immediately went to a commercial establishment located near the Apartment (the "Commercial Establishment"), where she called 911 to seek help.

    j. On or about April 4, 2024, after law enforcement officers responded to the Victim's 911 call, the Victim was taken to a hospital, where she underwent medical treatment. Medical professionals' observations of the Victim's injuries were consistent with the Victim having survived a sexual assault.

    k. The Victim stated that WALLACE used the WALLACE Phone to record a video of the Victim performing oral sex on WALLACE.

    l. The Victim also stated that WALLACE used a third-party online dating application (the "Dating App"), to communicate with other individuals and arrange for those individuals to engage in sexual intercourse with the Victim in exchange for money.

*Corroboration from 911 Call and Related Records*

8.  Based on my review of radio transmissions, 911 calls, and related records obtained from the New York City Police Department ("NYPD"), I have learned the following, among other things:

    a.  On or about April 4, 2024, at approximately 1:24 p.m., a 911 call was placed from the telephone number that is associated with the Commercial Establishment located near the Apartment.

    b.  On that 911 call, the Victim reported, in substance and in part, that she "was basically kidnapped" by someone named Anthony. The Victim also stated, in substance and in part, that "he's gonna come looking" because "I have his phone and everything."

*Corroboration from WALLACE's Cellphone, Including Sex Video*

9.  On or about April 5, 2024, the Honorable Robyn F. Tarnofsky, United States Magistrate Judge for the Southern District of New York, signed a search warrant for the WALLACE Phone.

10. Based on my review of data from the WALLACE Phone, I have learned the following, among other things:

    a.  The WALLACE Phone contains several videos and photographs which indicate that (1) WALLACE and the Victim were together on or about March 16 and 17, 2024, and (2) WALLACE recorded a video of the Victim performing oral sex on him, on or about March 17, 2024.

        i.  The WALLACE Phone contains a video that is approximately 43 seconds long and that was filmed on or about March 17, 2024, at approximately 3:31 p.m. (the "Oral Sex Video"). In the Oral Sex Video, the individual filming is sitting down and holding the camera in front of his face. The camera captures an individual – whom I recognize to be the Victim – performing oral sex on the individual filming. In the background, certain features of the room (the "Room") can be seen, including a door, a television, a trophy, and a futon. Based on the Victim's statements summarized above, the Oral Sex Video corroborates the Victim's assertion that WALLACE used the WALLACE Phone to record a video of the Victim performing oral sex on WALLACE (*supra* ¶ 7(k)). At the time of this recording, on or about March 17, 2024, the Victim was approximately 15 years old.

        ii. The WALLACE Phone also contains a photograph that was taken on or about March 16, 2024, at approximately 6:12 p.m. In that photograph, which also appears to have been taken inside the Room, it is possible to see the back of a male individual's head. The Victim is not visible. I respectfully submit that it is likely the Victim took this photograph of WALLACE, using the WALLACE Phone.

        iii. The WALLACE Phone also contains a selfie video that was filmed on or about March 16, 2024, at approximately 4:50 p.m. In that video, both WALLACE (who is

filming) and an individual I recognize to be the Victim can be seen in the frame. In the video, it appears that the Victim is watching television or staring at something. Based on my viewing of this video, it also appears to have been filmed inside the Room.

   b. The WALLACE Phone also contains the Dating App, and a preliminary analysis of that application is consistent with the Victim's statements that WALLACE used the Dating App to find men who would pay WALLACE money in exchange for sex with the Victim.

    i. In the Dating App on the WALLACE Phone, the username is "prettygiggles."

    ii. In the Dating App on the WALLACE Phone, there were messages covering the period from on or about March 18, 2024, through on or about March 27, 2024. This period was during the Victim's captivity. From this period, the Dating App account with username "prettygiggles" received messages from individuals who reached out to "prettygiggles," and "prettygiggles" responded to these messages saying, in substance and in part, that "prettygiggles" was looking to meet or link up in exchange for money.

    iii. In the Dating App on the WALLACE Phone, the profile settings for "prettygiggles" indicated that "prettygiggles" was looking for males between 37 and 62 years old within a distance of 100 miles.

### *Corroboration from Search of the Apartment*

  11. On or about April 9, 2024, the Honorable Sarah Netburn, Chief United States Magistrate Judge of the Southern District of New York, signed a search warrant for the Apartment.

  12. On or about 6:00 a.m., on April 10, 2024, I and other law enforcement officers (the "Officers"), executed the search warrant for the Apartment. Based on my participation in the execution of the search warrant, as well as my review of items seized from the Apartment, I have learned the following, among other things:

   a. The front door of the Apartment was locked and barricaded with, among other things, a refrigerator, a sofa, and a bicycle. The barricading of the front door is consistent with the Victim's statement that WALLACE had barricaded the front door of the Apartment so that others could not get in.

   b. There was a green curtain covering the window of the bedroom, which led to a fire escape. This is also consistent with statements the Victim made to me about the Apartment.

   c. In the course of the search, the Officers found two dildos in the bedroom and one object that appeared to be a vibrator in the living room.

   d. In the course of the search, the Officers recovered mail in the name of "Anthony Wallace" that was sent to the Apartment's mailing address. The Officers also recovered a government benefit card in the name of "Anthony Wallace" and court documents involving "Anthony Wallace."

5

WHEREFORE, I respectfully request that a warrant be issued for the arrest of ANTHONY WALLACE, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

/s authorized electronic signature
_____
COURTNEY THORPE
Task Force Officer
Federal Bureau of Investigation

Sworn to me through the transmission of this
Affidavit by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 41(d)(3) and 4.1,
this 12th day of April 2024.
_____
THE HONORABLE SARAH NETBURN
Chief United States Magistrate Judge
Southern District of New York

6